Singleterry v. Nashua Cartridge          CV-94-345-SD  02/09/95
                 UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEW HAMPSHIRE


Paul Singleterry


        v.                                    Civil No. 94-345-SD


Nashua Cartridge Products, Inc.;
Samuel Daniell; Robert Eastman;
Christopher Phillips


                           O R D E R


     In this civil action, plaintiff Paul Singleterry asserts a

federal claim for race discrimination under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and state-

law claims for wrongful termination and intentional infliction of

emotional distress against Nashua Cartridge Products, Inc.

(NCPI), Samuel Daniell, Robert Eastman, and Christopher Phillips.

Plaintiff's claims are based on his termination from employment

with NCPI on June 3, 1993.

     The court has jurisdiction over plaintiff's Title VII claims

pursuant to 42 U.S.C. § 2000e-5(f)(3) (1994).  Jurisdiction over

plaintiff's state-law claims exists under 28 U.S.C. § 1367

(1993).

     Presently before the court are motions filed by defendants

NCPI, Daniell, and Phillips to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., to which plaintiff objects.[1]

## Background

Paul Singleterry, an African American male, asserts that on June 3, 1993, he was unlawfully terminated from his employment at NCPI in retaliation for his opposition to NCPI's racially discriminatory practices. Plaintiff further asserts that at all times relevant to this action defendant Daniell, the Personnel Manager for NCPI, and defendant Phillips, the Engineering Manager for NCPI, were his immediate supervisors.

While employed at NCPI, plaintiff alleges that he was subjected to an unlawful pattern of harassment, denied several positions for which he was qualified, and placed in positions for which he was overqualified. Complaint ¶¶ 15-21. As a result of these problems, plaintiff filed a charge of discrimination with the New Hampshire Commission on Human Rights (NHCHR) on July 6, 1992.[2] See Charge of Discrimination dated July 6, 1992 (attached

---

[1]The parties' request for oral argument, which is not accompanied by "a written statement by counsel outlining the unusual reasons why oral argument may provide assistance to the court," is herewith denied. See Local Rule 11(g).

[2]NHCHR serves as an agent for the Equal Employment Opportunity Commission (EEOC). See 29 C.F.R. §§ 1601.74 and 1601.80 (1994).

to Defendants' Motion as Exhibit A).

Plaintiff further alleges that "[a]fter several unproductive meetings with defendants Daniell and Phillips in May and June of 1993 in which [he] was verbally harassed, insulted, threatened, and physically assaulted, [he] was fired." Complaint ¶ 21. On June 10, 1993, approximately one week following his termination, plaintiff filed a second charge of discrimination with NHCHR alleging continuing discrimination and specific retaliation based on the filing of the first charge of discrimination. See Charge of Discrimination dated June 10, 1993 (attached to Defendants' Motion as Exhibit B and to Plaintiff's Objection as Exhibit A). Plaintiff appended to this second charge a statement detailing the events surrounding his termination.

On April 6, 1994, the EEOC issued plaintiff a Notice of Right to Sue letter.[3] See EEOC Notice of Right to Sue (attached to Complaint). Within 90 days thereafter, plaintiff filed the instant action.

---

[3]Absent evidence to the contrary, the court is assuming for the purposes of this motion that the Notice of Right to Sue letter dated April 6, 1994, encompasses both the July 6, 1992, and the June 10, 1993, charges of discrimination.

3

<u>Discussion</u>

## 1.  Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  Resolution of defendants' motions requires the court to accept the well-pleaded facts contained in the complaint as true and to extend all reasonable inferences in plaintiff's favor.  <u>Coyne v. Somerville</u>, 972 F.2d 440, 442-43 (1st Cir. 1992); <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992).  However, the court is not required to give weight to "'bald assertions, unsupportable conclusions, [or] opprobrious epithets.'" <u>Royal v. Leading Edge Products, Inc.</u>, 833 F.2d 1, 1 (1st Cir. 1987) (quoting <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir.), <u>cert. denied</u>, 483 U.S. 1021 (1987)).  The court may grant a motion to dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" <u>Garita Hotel</u>, <u>supra</u>, 958 F.2d at 17 (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

## 2.  Title VII Claim (Count A)

### a.  Exhaustion of Administrative Remedies

Defendants assert that Singleterry's Title VII claim should be dismissed because plaintiff failed to allege in the discrimination charges he filed with the EEOC that he was discharged in retaliation for his opposition to NCPI's allegedly racially discriminatory practices.  Therefore, defendants contend, plaintiff's retaliatory discharge claim goes beyond the scope of the EEOC investigation, and administrative remedies on this issue have not been exhausted.

"Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court."  Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990).  See also Brown v. General Services Admin., 425 U.S. 820 (1976).  The filing of a charge with the EEOC by an aggrieved party and the receipt of a notice of the right to sue are both prerequisites to filing a civil action under Title VII.  42 U.S.C. § 2000e-5(e)-(f).

Plaintiff's June 10, 1993, charge of discrimination alleges that plaintiff was "being retaliated against based on [his] filing the [July 6, 1992,] charge."  Charge of Discrimination dated June 10, 1993.[4]  Although none of the numbered paragraphs

---

[4]For the purposes of ruling on defendants' motions to dismiss, the court has considered the two charges of

5

contained within this charge of discrimination mention discharge, plaintiff appended a statement to the charge detailing the facts surrounding his termination. This statement was received by the NHCHR on the same day as the charge of discrimination.

Defendants contend that this statement was not sufficient to put the EEOC on notice that plaintiff had a retaliatory discharge claim, and thus trigger an EEOC investigation, because the statement was not explicitly incorporated by reference into the charge. However, "courts should be solicitous of plaintiffs who, while in district court are represented by counsel, completed the EEOC charge without legal aid." Winters v. Prudential-Bache Sec., Inc., 608 F. Supp. 751, 754 (N.D. Ill. 1984) (citing Love v. Pullman Co., 404 U.S. 522 (1972)). "Thus, the exact wording of the charge of discrimination need not '"presage with literary exactitude the judicial pleadings which may follow."'" Powers v. Grinnell Corp., 915 F.2d 34, 39 (1st Cir. 1990) (quoting Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir. 1971) (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970))). Instead, the question is "whether the claims set forth in the civil complaint come within the 'scope of the EEOC

---

discrimination filed by plaintiff with the EEOC without converting the motion into one for summary judgment since said documents are "sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

investigation which can reasonably be expected to grow out of the charge of discrimination.'" Powers, supra, 915 F.2d at 39 (quoting Sanchez, supra, 431 F.2d at 466).

The court finds that because plaintiff's retaliatory discharge allegations were contained in the statement appended to his June 10, 1993, charge of discrimination, the retaliatory discharge allegations contained in plaintiff's Title VII claim come within the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination. Accordingly, defendants' motion to dismiss plaintiff's Title VII claim for failure to exhaust administrative remedies is denied.

### b. Failure to Name Phillips in the EEOC Complaint

Defendant Phillips asserts that plaintiff's Title VII claim must be dismissed as to him because of plaintiff's failure to name him in the EEOC charges as a person who discriminated against plaintiff.

Under Title VII, a respondent must be named in the charge before he can be sued. See 42 U.S.C. § 2000e-5(f)(1) ("a civil action may be brought against the respondent named in the charge"). "The purpose of this requirement is twofold: to provide notice to the charged party and to bring the relevant

7

parties before the EEOC in an effort to secure voluntary compliance with the statute." <u>Baranek v. Kelly</u>, 630 F. Supp. 1107, 1112 (D. Mass. 1986).

In the instant case, plaintiff named only his corporate employer, NCPI, as respondent in the caption of the two charges of discrimination he filed with the EEOC.  Further, in the body of the first charge of discrimination, plaintiff states,

> My immediate supervisor is Chris Phillips, Engineer, but I believe it is Sam Daniell, Director of Facilities/Personnel, Bob Eastman, General Manager, and Bill Manning, Controller, who are making the discriminatory decisions.

July 6, 1992, Charge of Discrimination.  Similarly, plaintiff states in the body of his second charge of discrimination,

> On July 6, 1992 I filed a charge of race and color discrimination against Nashua Cartridge Products of Exeter, N.H., naming Sam Daniells, Director of Facilities Personnel, Bob Eastman, General Manager, and Controller Bill Manning as those making the discriminatory decisions.

June 10, 1993, Charge of Discrimination.  However, the statement appended to the June 10, 1993, charge of discrimination specifically names Phillips as a party to the discrimination and to the allegedly retaliatory discharge of plaintiff.  In so doing, plaintiff notified the EEOC of his charges against

8

Phillips.[5]

The court finds that by naming Phillips in the statement appended to the charge of discrimination filed with the EEOC on June 10, 1993, plaintiff "named" Phillips as one of the individuals who discriminated against him.  See, e.g., Lange v. Cigna Individual Financial Services Co., 759 F. Supp. 764, 768-69 (D. Kan. 1991) (Title VII action properly brought against defendants who were not named as respondents in plaintiff's EEOC charge but were specifically named in an affidavit setting forth the facts supporting plaintiff's claim of discrimination), modified, in part, on other grounds, 766 F. Supp. 1001 (D. Kan. 1991); Diem v. San Francisco, 686 F. Supp. 806 (N.D. Cal. 1988) (naming a defendant in the body of an EEOC complaint or in a claim filed with such a complaint is sufficient to put the defendant on notice); Van Hoomissen, supra, 368 F. Supp. at 834-35 (naming two individual defendants in attachments to an EEOC

_____

[5]Defendants allege that the appended statement was never served upon them.  However, it is the responsibility of the EEOC to provide notice to the respondents named in the charge of discrimination.  See 29 C.F.R. § 1601.14 ("the Commission shall serve respondent a copy of the charge").  Further, the question of whether EEOC did in fact investigate and notify Phillips of the charges is not properly before the court at this stage of the litigation.  See Van Hoomissen v. Xerox Corp., 368 F. Supp. 829, 835 (N.D. Cal. 1973) (determination of whether EEOC investigated and notified defendants of charges is evidentiary question which can be resolved at time of trial).

charge of discrimination sufficient to put EEOC on notice of the charges against said individuals). Therefore, the motion to dismiss plaintiff's Title VII claim as to defendant Phillips is hereby denied.

3.  Wrongful Discharge (Count B)

    a.  Phillips and Daniell

Defendants assert that plaintiff's wrongful discharge claim should be dismissed as to defendants Phillips and Daniell because there is no contractual relationship upon which to assert such a claim.

"[T]he existence of an employment contract is, perhaps, the most fundamental prerequisite to a claim of wrongful discharge." Bourque v. Bow, 736 F. Supp. 398, 401 (D.N.H. 1990) (applying New Hampshire law). Plaintiff does not dispute that he was employed by NCPI, not by defendants Phillips and Daniell in their individual capacities. Accordingly, defendants' motion to dismiss plaintiff's claim for wrongful discharge against defendants Phillips and Daniell is hereby granted.

    b.  NCPI

Defendants further assert that plaintiff's wrongful discharge claim should be dismissed as to NCPI because such a

10

claim cannot be derived from his Title VII claim.

In order to assert a wrongful discharge claim under New Hampshire law, a plaintiff must first allege that his discharge was motivated by the defendant's bad faith, malice, or retaliation. Cloutier v. Great Atlantic & Pacific Tea Co., 121 N.H. 915, 921, 436 A.2d 1140, 1143 (1981) (citing Monge v. Beebe Rubber Co., 114 N.H. 130, 136, 316 A.2d 549, 551 (1974)). The plaintiff must also allege that he was discharged "because he performed an act that public policy would encourage, or refused to do something that public policy would condemn." Id., 121 N.H. at 922, 436 A.2d at 1144 (citing Howard v. Dorr Woolen Co., 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980)).

In arguing that the availability of a remedy under Title VII precludes a wrongful discharge action, defendants rely on the decision of the New Hampshire Supreme Court in Howard v. Dorr Woolen Co., 120 N.H. 295, 414 A.2d 1273 (1980), and on two unpublished opinions from this court, Smith v. F.W. Morse, Inc., No. 90-361-S (D.N.H. Sept. 26, 1991), and Gilbert v. Essex Group, Inc., No. 93-256-JD (D.N.H. Dec. 8, 1993). In each of these cases, the courts held that the wrongful discharge doctrine does not provide a remedy to at-will employees discharged because of their age or sex. Instead, the courts held that the proper remedy for age or sex discrimination is provided for by statute.

11

The court finds the instant case to be readily distinguishable from the vein of cases cited by defendants. Here, plaintiff's claim of wrongful discharge is not based on the allegation that he was discharged because of his race. Instead, plaintiff alleges that he was discharged in retaliation for raising allegations of race discrimination. Plaintiff further alleges that he was discharged for performing an act which public policy would encourage--filing a charge of discrimination with the EEOC.

The court finds the instant case to be more analogous to its decision in Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179 (D.N.H. 1992), than to the cases cited by defendants. In Godfrey, the plaintiff alleged that she was constructively terminated after reporting numerous incidents of sexual harassment to one of her supervisors. The defendants in Godfrey sought dismissal of plaintiff's wrongful discharge claim on the ground that such a claim "cannot be premised upon a public policy embodied in a statute [Title VII] which provides a remedy for its violation." Id. at 1187. The court rejected the defendants' argument and allowed the wrongful discharge claim to go forward, stating that their argument "ignores the clarification in Cloutier that the public policy exceptions may be either statutory or nonstatutory in nature." Id. (citing Cloutier,

12

<u>supra</u>, 121 N.H. at 921-22, 436 A.2d at 1141).

The court finds and rules that the allegations set forth in plaintiff's complaint are sufficient to state a claim for wrongful discharge under New Hampshire law. Accordingly, defendants' motion to dismiss Count B as to NCPI is herewith denied.

<u>4. Intentional Infliction of Emotional Distress (Count C)</u>

<u>a. NCPI</u>

Defendants assert that plaintiff's claim for intentional infliction of emotional distress must be dismissed as to NCPI because such claim is barred by New Hampshire's Workers' Compensation Law.

The Workers' Compensation Law in New Hampshire contains an "exclusivity" provision which states in relevant part:

> I. An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions of this chapter and, on behalf of the employee or the employee's personal or legal representatives, to have waived all rights of action whether at common law or by statute or provided under the laws of any other state or otherwise:
> (a) Against the employer or the employer's insurance carrier or an association or group providing self-insurance to a number of employers; . . . .

New Hampshire Revised Statutes Annotated (RSA) 281-A:8, I (1987 &

13

Supp. 1993). This exclusivity provision "'prohibits an employee from maintaining a common-law action against his employer for personal injuries[6] arising out of the employment relationship.'" Brewer v. K.W. Thompson Tool Co., 647 F. Supp. 1562, 1565 (D.N.H. 1986) (quoting O'Keefe v. Associated Grocers, Inc., 120 N.H. 834, 835-36 (1980)).

It is well established under New Hampshire law that "[e]motional distress is a personal injury, not subject to recovery in a common law action under state workmen's compensation statute." Censullo v. Brenka Video, Inc., 989 F.2d 40, 43 (1st Cir. 1993) (affirming district court's finding that plaintiff's claim of intentional infliction of emotional distress against his employer is barred by the workers' compensation law). See also Kopf v. Chloride Power Elec., Inc., No. 94-391-SD, ___ F. Supp. ___, 1995 U.S. Dist. LEXIS 384 (D.N.H. Jan. 12, 1995). Plaintiff contends, however, that because defendant's actions were intentionally or recklessly taken, plaintiffs's injury was not accidental and therefore is not subject to the exclusivity provision in RSA 281-A:8, I.

The issue raised by defendants was previously addressed by

_____

[6]"'Injury' or 'personal injury' as used in and covered by [RSA 281-A] means accidental injury or death arising out of and in the course of employment . . . ." RSA 281-A:2, XI.

14

this court in <u>Brewer</u>, <u>supra</u>, 647 F. Supp. at 1562, where the court recognized a distinction between "actions intentionally taken" and "injury intentionally caused." <u>Id.</u> at 1566. Explaining the distinction, the court, quoting a well-known treatise on workers' compensation law, stated,

> "Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury."

<u>Id.</u> at 1566 (quoting 2A LARSON, THE LAW OF WORKMEN'S COMPENSATION § 68.13 (1983) (footnotes omitted)).

In his complaint, plaintiff alleges that defendants "intentionally or recklessly by extreme and outrageous conduct in the nature of handling Plaintiff's allegations and ultimately terminating Plaintiff, caused Plaintiff to suffer severe emotional distress." Complaint ¶ 39. Having considered all of the allegations set forth in the complaint, the court finds that, although defendants' conduct may well have been "intentionally taken," such conduct is an insufficient predicate to support a claim that defendants acted with the intent of causing plaintiff

15

emotional distress. Accordingly, to the extent that plaintiff's claim of intentional infliction of emotional distress is asserted against NCPI, the court finds the claim to be barred by RSA 281-A:8, I. Defendants' motion to dismiss Count C as to NCPI is therefore granted.

### b. Daniell and Phillips

Defendants Daniell and Phillips assert that Count C must be dismissed as to them on the ground that plaintiff has failed to allege conduct sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress is defined under New Hampshire law as follows:

> "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Morancy v. Morancy, 134 N.H. 493, 496, 593 A.2d 1158, 1159 (1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)); see also Soltani v. Smith, 812 F. Supp. 1280, 1296 (D.N.H. 1993).

In evaluating plaintiff's allegations of outrageous conduct, the court looks to the RESTATEMENT (SECOND) OF TORTS § 46 (1965) for guidance. See Jarvis v. Prudential Ins. Co., 122 N.H. 648, 652,

16

448 A.2d 407, 409 (1982); Godfrey, supra, 794 F. Supp. at 1188-89. The RESTATEMENT provides,

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

Godfrey, supra, 794 F. Supp. at 1189 (quoting RESTATEMENT supra, comment d). Further, "'[t]he extreme and outrageous nature of the conduct may arise not so much from what is done as from the abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests.'" Id. at 1190 (quoting W. PAGE KEETON, ET AL, PROSSER AND KEETON ON THE LAW OF TORTS § 12, at 61 (W.P. Keeton 5th ed. 1984)).

In support of his intentional infliction of emotional distress claim, plaintiff makes the following factual allegations:

> 18.c. Defendant Daniell and Ms. [Mary] Stevens both threatened plaintiff's employment at Nashua Cartridge.
> d. Defendant Daniell called Plaintiff a "nigger".
> e. Defendant Daniell violated company policy when he issued Plaintiff a letter of warning in front of co-workers.
> f. Defendant Daniell assaulted Plaintiff

17

> in his office.
> g.  Defendant Daniell told Plaintiff that he was not the image they wanted as the receptionist.
> . . .
> 21.  After several unproductive meetings with Defendants Daniell and Phillips in May and June of 1993 in which the Plaintiff was verbally harassed, insulted, threatened, and even physically assaulted, Plaintiff was fired.

Complaint ¶¶ 18.c.-g., 21.  Plaintiff further alleges that both Phillips and Daniell occupied positions of authority over him. Complaint ¶¶ 11, 13.

On the basis of the allegations contained in plaintiff's complaint, the court finds that plaintiff is entitled to present evidence to support his claim of intentional infliction of emotional distress against defendants Daniell and Phillips. Accordingly, defendants' motion to dismiss Count C as to defendants Daniell and Phillips is herewith denied.


<u>Conclusion</u>

For the reasons set forth herein, defendants' motions to dismiss (documents 5 and 8) are granted as to (1) plaintiff's wrongful discharge claim against defendants Daniell and Phillips and (2) plaintiff's intentional infliction of emotional distress

18

claim against defendant NCPI.  Said motions are otherwise denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 9, 1995

cc:  Eugene A. DiMariano, Jr., Esq.
     Debra Dyleski-Najjar, Esq.