Douglas v. Coca-Cola                  CV-94-097-M   11/06/95
                  UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Pamela Douglas,
     Plaintiff,

     v.                                      Civil No. 94-97-M

Coca-Cola Bottling Company of
Northern New England, Inc. and Richard Neal,
     Defendants.


                    ORDER ON MOTIONS TO DISMISS


I.   **FACTUAL AND PROCEDURAL BACKGROUND**

     Plaintiff, Pamela Douglas, has filed a claim pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e as

amended by the Civil Rights Act of 1991 ("Title VII"), whereby

she seeks damages for unlawful sexual harassment while employed

by Coca-Cola Bottling Company of Northern New England ("CCNE").

     Douglas alleged in her complaint that she was initially

hired as an administrative assistant for CCNE at its Salem, New

Hampshire plant on January 16, 1989.  Shortly thereafter, she was

transferred to its Londonderry plant.  Initially, Douglas'

supervisor was Ed Bryant.  In January 1990, Mr. Bryant was

replaced as plant manager by defendant Richard Neal.  At that

time, Douglas began reporting directly to Neal.

Douglas maintains that her job performance was satisfactory as evidenced by an October 1991 evaluation which rated her performance as very good in most categories and for which she received a significant salary increase. She alleges that beginning in May 1991, defendant Neal "made sexually suggestive statements, massaged [her] shoulders, hit [her] on the buttocks, and pretended to touch [her] breasts" on more than one occasion. Complaint at ¶18. Douglas claims this conduct not only occurred but was unwelcome.

In late October, early November 1991, Neal accompanied Douglas to lunch during which he "told Plaintiff he was sexually attracted to her and that he wished to have an affair with her." Complaint at ¶22. Douglas immediately changed the subject and from that point tried "to keep her distance" from Neal and to keep their relationship professional. Complaint at ¶23. Douglas alleges that as a consequence, Neal began criticizing her work. On December 27, 1991, Neal called her into his office where he verbally berated her and criticized her job performance and attitude. Douglas was not given an opportunity to defend herself but was "told to sit down and shut up." Complaint at ¶27. She left in tears. On December 30, 1991, Douglas gave Neal a letter which addressed his concerns and requested a meeting to discuss

her return to work.  Finally, on December 31, 1991, Douglas met with Neal at which time she was fired.

Douglas then filed a five-count complaint, alleging that Neal was her supervisor at CCNE and that he sexually harassed her.  Counts I and II plead causes of action against defendants, Neal and CCNE, for violations of Title VII.  Count III pleads a state law claim for wrongful discharge against defendants.  Count IV pleads a state law claim for intentional infliction of emotional distress against Neal.  Finally, Count V pleads a state law claim for breach of implied covenant of good faith and fair dealing against CCNE.

Early on, Neal moved to dismiss Counts I and II of Douglas' complaint, Fed. R. Civ. P. 12(b)(6), claiming that an individual employee cannot be held personally liable under Title VII.  In addition, Neal moved to dismiss Count III of Douglas' complaint, Fed. R. Civ. P. 12(b)(6), claiming that New Hampshire common law does not recognize a claim for wrongful discharge where an adequate statutory cause of action and remedy already exist. CCNE also moved to dismiss Counts III and V on the grounds that New Hampshire common law does not recognize claims for wrongful discharge or breach of implied covenant of good faith and fair dealing where an adequate statutory cause of action and remedy

3

already exist.  This court (Loughlin, J.) denied all motions to dismiss in an Order issued on May 27, 1994.

Defendants now seek reconsideration of this court's prior denial of their motions to dismiss Counts III and V.  In addition, Neal requests this court to reconsider its denial of his motion to dismiss Counts I and II.[1]  Finally, Neal moves to dismiss Count IV, Fed. R. Civ. P. 12(b)(6), claiming that New Hampshire common law does not recognize a claim for intentional infliction of emotional distress where an adequate statutory remedy already exists.

Having reconsidered the issues raised in defendants' motions, their motion to dismiss Count III is denied.  CCNE's motion to dismiss Count V is granted.  Neal's motion to dismiss Counts I and II is granted, and his motion to dismiss Count IV is denied.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is one of very limited inquiry, focusing not on "whether the

---

[1] Although Neal raises his request for reconsideration as to Counts I and II within his motion for summary judgment (document no. 30), and not as a part of his motion to dismiss and motion to reconsider (document no. 25.1), the court will address his request in this Order.

4

plaintiff will ultimately prevail, but whether [the plaintiff] is entitled to offer evidence to support [the] claims." McLean v. Gaudet, 769 F. Supp. 30, 31 (D.N.H. 1990) (citing Scheur v. Rhodes, 416 U.S. 232, 236 (1974)). A court must take the factual averments within the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)). In the end, a motion to dismiss may be granted under Rule 12(b)(6) "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

## III. DISCUSSION

### A. Title VII and Section 354 Do Not Deprive Douglas of Her Common Law Claims

Defendants' motion to reconsider the denial of their motions to dismiss Counts III and V and Neal's motion to dismiss Count IV are all premised on the theory that New Hampshire law does not recognize common law causes of action where adequate statutory remedies exist. Specifically, defendants claim that Douglas has

5

adequate statutory remedies under Title VII and/or N.H. Rev. Stat. Ann. § 354-A:7, 21 et. seq. ("section 354-A") and that these remedies deprive her of any state common law causes of action that she might otherwise have had.

A federal court called upon to apply state law must "take state law as it finds it: `not as it might conceivably be, some day; nor even as it should be.'" Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v. Abbott Laboratories, 568 F.Supp. 920, 927 (D.R.I. 1983)). When state law has been authoritatively interpreted by the state's highest court, this court should apply that law according to its tenor. Kassel, 875 F.2d at 950.

In Wenners v. Great State Beverages, 663 A.2d 623 (N.H. 1995), the New Hampshire Supreme Court stated, "[A] plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action." Id. at 625. Thus, a state common law cause of action may be supplanted by a state statutory cause of action if the legislative body enacting the statute so intended. Id. Given the standard articulated in Wenners, Douglas' state common law causes of action for wrongful discharge (Count III), intentional infliction of emotional distress (Count IV), and breach of implied covenant of good faith

and fair dealing (Count V) are supplanted only if the New Hampshire legislature so intended.

### 1. Title VII Is Not Preemptive

Courts interpreting Congress' intent in enacting Title VII have consistently held that "Title VII was designed to supplement, not supplant, existing laws." Ramos v. Roche Products, Inc., 936 F.2d 43, 50 (1st Cir.), cert. denied, Rossy v. Roche Prods., 502 U.S. 941 (1991). In fact, "Congress intended for an individual to pursue rights under both state and federal applicable statutes, as well as Title VII." Id. (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 47-49 (1974)). This court has regularly allowed plaintiffs to pursue state common law causes of action concurrent with Title VII claims. Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179 (D.N.H. 1992) (allowing state wrongful discharge and intentional infliction of emotional distress claims accompanying Title VII claim); Chamberlin v. 101 Realty, Inc., 626 F. Supp. 865 (D.N.H. 1985) (same). Because Congress intended Title VII to add to and not replace state and federal statutory and common law causes of action, Title VII's availability does not deprive Douglas of any state law remedies available to her.

7

## 2. Section 354-A

Defendants next argue that Douglas' common law causes of action have been supplanted by section 354-A. Sections 354-A:7, 21 et. seq. provide a remedial scheme for those who have suffered, at the hands of their employers, unlawful discrimination on the basis of sex, age, race, and a host of other characteristics. Sexual harassment constitutes unlawful sex discrimination. N.H. Rev. Stat. Ann. § 354-A:7(V) (Supp. 1994).

### a. Wrongful Discharge

Defendants claim that in enacting section 354 the New Hampshire legislature intended to supplant common law causes of action arising out of sex discrimination in the employment context. In support of their assertion, defendants rely on Howard v. Dorr Woolen Co., 120 N.H. 295 (1980). Howard, they claim, stands for the proposition that section 354 supplants common law causes of action for wrongful discharge based on age discrimination. Defendants then argue, by analogy, that section 354 also must supplant state common law causes of action for wrongful discharge based on sex discrimination.

Defendants' reliance on Howard is misplaced. Howard did not hold that section 354 supplanted a common law cause of action. Rather, it held that New Hampshire did not recognize a common law cause of action for wrongful discharge based on age discrimination; discharge due to age discrimination did not fall within the category of terminations actionable under common law as defined in Monge v. Beebe Rubber Co., 114 N.H. 130 (1974) (holding that common law cause of action for wrongful termination exists when termination constituted retaliation for refusing sexual advances). Therefore, there was no common law cause of action for discharge based on age discrimination for section 354 to supplant.

The Howard court did go on to note, in dicta, that absent a common law cause of action for wrongful discharge based on age discrimination, the "proper remedy for an action for unlawful age discrimination is provided for by" section 354. Howard, 120 N.H. at 297. While Howard stands for the proposition that the legislature obviously intended section 354 to remedy age and sex discrimination, it cannot be said to support the notion that the legislature intended section 354 to "supplant" a cause of action for such discrimination recognized under the common law.

9

Defendants next rely on the recent New Hampshire Supreme Court decision in Wenners v. Great State Beverages, 663 A.2d 623 (N.H. 1995). Wenners, they claim, interprets Howard to mean that section 354 supplanted a common law cause of action for age discrimination. Wenners does hint at such an interpretation. The hint, however, is found in a citation signal and barely rises to the level of dicta. The signal invites the reader to "compare" Wenners, in which the court found no clear legislative intent to supplant the common law cause of action at issue, to Howard, in which "the proper remedy for age discrimination [was] provided by statute." Wenners, 663 A.2d at 625. As stated earlier, Howard did not address the question of whether section 354 "supplanted" a common law cause of action. In any event, an ambiguous citation signal seemingly at odds with prior New Hampshire Supreme Court precedent is far too slender a reed on which to rest a finding of legislative intent to supplant the common law.

Far more reliable indicia of legislative intent can be found in the histories of the statutory and common law causes of action. In 1971 the New Hampshire Legislature created a statutory remedy for sex discrimination in the employment context. N.H. Rev. Stat. Ann. § 354-A:2 (1984) (Historical

10

Note).  In 1974, in the face of this pre-existing statutory remedy, the New Hampshire Supreme Court recognized for the first time a common law cause of action for wrongful discharge based on sex discrimination.  Monge, 114 N.H. at 132-33.  Because the statutory remedy was created before the common law cause of action was formally recognized, the legislature probably did not intend to supplant the common law cause of action.

Finally, the conclusion that section 354 does not supplant the common law finds support in recent cases in which this court has recognized state common law causes of action for wrongful discharge based on sex discrimination.  Godfrey, 794 F. Supp. at 1187; Chamberlin, 626 F. Supp. at 867-68.  Therefore, having reconsidered the matter, defendants' motion dismiss Count III is denied.

### b.    Intentional Infliction of Emotional Distress

Because this court finds that the legislature did not intend to supplant the common law cause of action for wrongful discharge based on resistance to sexual harassment, we find, a fortiori, that section 354 also does not supplant Douglas' cause of action for intentional infliction of emotional distress.  Section 354 was intended to remedy sex discrimination in the employment

11

context; it was not intended to remedy all injuries inflicted by acts that might also give rise to a claim of unlawful discrimination. Douglas' claim for intentional infliction of emotional distress is brought to vindicate interests slightly different from those redressed under section 354. To the extent that the interests protected differ, a statutory remedy cannot be said to supplant a common law cause of action. Shaffer v. National Can Corp., 565 F. Supp. 909, 914 (E.D. Pa. 1983) (holding that common law cause of action for intentional infliction of emotional distress not supplanted by state discrimination statute); Bailey v. Unocal Corp., 700 F. Supp. 396 (N.D. Ill. 1988) (same). Accordingly, Neal's motion to dismiss Count IV is denied.[2]

---

[2] Within his motion for summary judgment (document no. 30), Neal also contends that Douglas' cause of action for intentional infliction of emotional distress is supplanted by N.H. Rev. Stat. Ann. § 281-A:8, part of the New Hampshire Workers' Compensation Law. The workers' compensation statutory scheme does provide employees with immunity from non-intentional tort claims brought by co-employees. Thompson v. Forest, 136 N.H. 215, 219 (1992). That immunity, however, does not extend to intentional torts claims. Id. A common law claim for intentional infliction of emotional distress is an intentional tort claim. Censullo v. Brenka Video, Inc., 989 F.2d 40, 44 (1st Cir. 1993). Therefore, Douglas may maintain a cause of action for intentional infliction of emotional distress against Neal.

12

### c.    Breach of Implied Covenant

Douglas' cause of action for breach of implied covenant of good faith and fair dealing (Count V) is similarly not supplanted by section 354.  Nevertheless, Count V must be dismissed for failing to state a claim upon which relief can be granted.

At best, New Hampshire law provides that an at-will employment "contract," such as the employment relationship between Douglas and CCNE, contains an implied covenant of good faith and fair dealing which limits the power of the employer to discharge an at-will employee. <u>Centronics Corp. v. Genicom Corp.</u>, 132 N.H. 133, 139-40 (1989).  However, an employer's right to discharge an at-will employee is limited only in a certain, narrowly defined way.  An employer breaches the implied covenant of good faith and fair dealing (or commits the tort of wrongful discharge)[3] when the employer discharges an employee in bad faith <u>and</u> the employee was discharged for performing an act that public policy would encourage or refusing to do something that public policy would condemn.  <u>Cloutier v. Great Atlantic & Pacific Tea Co.</u>, 121 N.H. 915, 920-23 (1981).  <u>Cloutier</u> defines all that good

---

[3] It is not necessary here to explore contracts or torts as the proper characterization of the New Hampshire common law cause of action known by the label "wrongful discharge."

13

faith and fair dealing require of an employer in dealing with an at-will employee.

In her complaint, Douglas claims, in contract terms, that CCNE breached the implied good faith covenant by not taking appropriate measures to eliminate and prevent unlawful sexual harassment in the workplace. To the extent that Douglas asserts that those alleged employer failures constitute an actionable breach, she does not state a claim upon which relief can be granted under Cloutier and its progeny.

To the extent that Douglas claims that CCNE violated the implied covenant by discharging her because she spurned Neal's sexual advances, her causes of action for wrongful discharge and breach of an implied covenant of good faith are redundant. Expressed in contract terms, discharge of an at-will employee is wrongful precisely because it breaches the implied covenant of good faith and fair dealing implicit in the at-will employment relationship, as defined under New Hampshire's common law. Cloutier, 121 N.H. at 920.

### 3. Individual Liability Under Title VII

In his motion for summary judgment (document no. 30), Neal requests this court to reconsider its denial of his motion to

dismiss Counts I and II on the ground that employees cannot be held individually liable under Title VII. In the year and a half since this court issued its Order denying Neal's motion to dismiss, the applicable law has evolved considerably. Although the United States Court of Appeals for the First Circuit has not yet decided the issue, the clear majority of recent circuit court decisions recognize that employees cannot be held individually liable for violations of Title VII. See Tomka v Seiler, No. 94-7975, 1995 WL 572112, at *17-20 (2d Cir. Sept. 27, 1995); Cross v. Alabama Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1504 (11th Cir. 1995); Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir.), cert. denied, 115 S. Ct. 574 (1994); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993); Miller v. Maxwell's Int'l, 991 F.2d 583, 587-88 (9th Cir. 1993), cert. denied, Miller v. La Rosa, 114 S. Ct. 1049 (1994). But see Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989), rev'd in part, aff'd in relevant part, 900 F.2d 27 (4th Cir. 1990) (en banc). Those decisions are persuasive, and the prior ruling should be amended. Accordingly, Counts I and II are dismissed as to Neal.

## IV. CONCLUSION

For the reasons stated above, neither Title VII nor section 354 deprives Douglas of her state common law causes of action; in addition, employees cannot be held individually liable under Title VII. Accordingly, defendants' motion to dismiss Count III (document no. 25.1) is denied, CCNE's motion to dismiss Count V (document no. 25.1) is granted, Neal's motion to dismiss Count IV (document no. 25.1) is denied, and Neal's motion to dismiss Counts I and II (contained in document no. 30) is granted.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

November 6, 1995

cc:  Kathleen C. Peahl, Esq.
     Robert E. Jauron, Esq.
     Peter Bennett, Esq.